## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**EDWARD GORMAN,** *on behalf of himself and on behalf of all others similarly situated*,

      **Plaintiff,**

v.                         **CASE NO.: 8:20-cv-02275-CEH-AEP**

**WHELAN EVENT STAFFING SERVICES, INC.,**

      **Defendant.**

_____/

## PLAINTIFF'S AMENDED UNOPPOSED MOTION FOR PRELIMINARYAPPROVAL OF CLAS ACTION SETTLEMENT

Plaintiff, Edward Gorman ("Named Plaintiff"), pursuant to Fed.R.Civ.P. 23, files this Unopposed Amended Motion for Preliminary Approval of the Parties' Class Action Settlement (the "Motion"), with incorporated Memorandum of Law.

On November 1, 2021, the Court entered its Order granting preliminary approval of the Parties' class action settlement. See Doc. 63. After the Court entered its Order, Defendant began compiling the necessary information to provide to the settlement administrator so notice could be mailed to class members, including names and addresses. During that process, Defendant's counsel learned that the class size consists of 12,600 additional individuals. So, whereas before the class included 16,600 total class members, the new class size is comprised of 29,202 class

members.  As a result, the Parties agree that, based on the new class size, the total common fund should be increased to $750,000.00, as set forth below.

Based on the following, Plaintiff seeks an Order: (1) preliminarily approving the Amended Settlement Agreement between Named Plaintiff, the putative class, and defendant; (2) preliminarily certifying a class for settlement purposes only; (3) approving the form and manner of notice to the class; (4) scheduling a fairness hearing for the final consideration and approval of the parties' class action settlement; and, finally, (5) approving the class action settlement in a subsequent Order.  A proposed Order is attached as Exhibit A.    In further support of this Motion, Named Plaintiff respectfully submits the following:

## I.    BACKGROUND AND OVERVIEW OF LITIGATION.

On or about July 1, 2020, Named Plaintiff filed this putative class action lawsuit (the "FCRA Litigation") asserting claims against Defendant Whelan Event Staffing Services, Inc. ("WESS") under the Fair Credit Reporting Act on behalf of himself and on behalf of a proposed class of similarly situated individuals.  In the Complaint, Named Plaintiff alleges, among other things, that WESS willfully violated the Fair Credit Reporting Act ("FCRA") under 15 U.S.C. § 1681b(b)(2). WESS has denied any liability and continues to do so.

By way of background, in June 2019, Named Plaintiff sought employment to work for WESS at Tropicana Field.  (Doc. 18, ¶ 27).  On June 20, 2019, Named Plaintiff completed WESS's pre-hiring paperwork, including documents regarding WESS's intent to obtain a consumer report on Named Plaintiff. (Doc. 18, ¶ 28).  As

part of its hiring processes, WESS uses background checks for employment purposes, and thus is subject to certain requirements of the FCRA. (Doc. 18, ¶ 4).

Based upon, among other things, WESS's pre-hiring paperwork, which Named Plaintiff construed to be violative of the FCRA, Named Plaintiff filed his original Complaint in July 2020, and then an Amended Complaint on October 22, 2020 (Doc. 18), which includes five separate counts. As is relevant for purposes of this Motion, in Count I of the Amended Complaint, Named Plaintiff brought a nationwide class claim against WESS under 15 U.S.C. § 1681b(b)(2) for its alleged willful failure to provide to applicants a standalone disclosure of its intent to obtain consumer reports for employment purposes, and alleged failure to obtain written authorization to obtain such reports. (Doc. 18, ¶ 10). The class for this claim is referred to as the "Disclosure Class" in the Amended Complaint and is defined as: "All consumers in the United States who applied for a position or promotion at [WESS] for the period five years before the filing of this lawsuit." (Doc. 18, ¶ 147).[1]

In terms of a procedural overview, this action was originally filed in state court on July 1, 2020. WESS removed the action to this Court on September 28,

---

[1] Count II of the Amended Complaint asserts a claim against WESS under 15 U.S.C. § 1681b(b)(3) because WESS allegedly failed to provide Named Plaintiff with a copy of the background report or a summary of rights under the FCRA before taking an adverse employment action. (Doc. 18, ¶ 11). It was later determined that, unlike Name Plaintiff's b(b)(2) claim, Named Plaintiff's b(b)(3) claim was not well-suited for class treatment due to facts unique to Named Plaintiff's particular situation. The Parties want the Court to know that they settled Mr. Gorman's individual claim for violation of 15 U.S.C. 1681b(b)(3) on a confidential basis not made part of the class settlement. The remaining counts of the Amended Complaint, Counts III, IV, and V, are brought only against Defendant Datamaxx, not WESS. Each of these claims has since been resolved.

2020. (Doc. 2). WESS filed its Motion to Dismiss on November 19, 2020. (Doc. 24). Both parties exchanged extensive written discovery, including answers to interrogatories and responses to requests for production. Depositions were tentatively set to occur sometime after mediation had the action not settled at the May 28, 2021 mediation.

The parties mediated this action twice, first on May 5, 2021, then again on May 28, 2021. With the assistance of one of the nation's most-highly regarded FCRA class action mediators, David N. Anthony, the parties reached a class-wide settlement for which they now seek Court approval. The parties attempted to track two similar FCRA class-action settlements this Honorable Court recently approved, including in *Harake v. Trace Staffing, Inc.* (8:19-cv-00243-CEH-CPT) (Doc. 55) (Judge Honeywell Order granting final approval of claims-made settlement in similar FCRA case), and *Twardosky v. Waste Management, Inc. of Florida, et al* 8:19-cv-02467-CEH-TGW (Doc. 57) (Judge Honeywell oral order granting final approval of claims-made settlement in similar FCRA case).

In sum, the parties submit that, for the same reasons the *Harake* and *Twardosky* settlements were approved, so too should this settlement be approved.

### B.  <u>Mediation And Settlement Agreement</u>.

The parties mediated this action twice, first on May 5, 2021, then again on May 28, 2021. At the second mediation, which went well into the evening of a holiday-weekend, the parties reached a tentative class-wide settlement that, if approved, will consist of approximately 29,202 members. The parties thereafter

executed an Amended Joint Stipulation of Class Settlement Agreement attached to this Motion as Exhibit B (the "Agreement"). The settlement class is defined as follows:

> Background Check Class: All individuals in the United States who applied for any position with Whelan Event Staffing Services, Inc. and were presented with a background check disclosure form during the period July 1, 2018 through the date of preliminary approval by the Court.

The Amended Agreement, subject to Court approval, provides for settlement under the following key terms:

- WESS agrees to establish a gross Settlement Fund in the amount of $750,000.00;

- Every Settlement Class Member that timely submits a claim will receive a gross payment of approximately $25.68, resulting in a net payment of approximately $15.12;[2]

- Payment from the Settlement Fund of the cost of notice and administration;

- Payment from the Settlement Fund of Class Counsel's attorney's fees in an amount of one-third of the common fund ($250,000), plus reasonable litigation costs totaling $4,589.05, which WESS does not oppose.

## II.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

### A.    The Law Governing Preliminary Approval.

The Eleventh Circuit has recognized that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil & Gas Litig.*,

---

[2] $750,000 - $250,000.00 in attorneys fees' and costs - $49,999 administrative costs - $4,589.05 in litigation costs = $445,411.95 / 29,202 class members = $15.25 net payment to class members who file claims.

967 F.2d 489, 493 (11th Cir. 1992). This Court has set forth the following process for preliminary approval of a class action settlement:

> Rule 23(e), Federal Rules of Civil Procedure, permits approval of a class action settlement if the settlement is "fair, reasonable, and adequate." *See Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D.Fla.2005) (Fawsett, J.). Approval is generally a two-step process in which a "preliminary determination on the fairness, reasonableness, and adequacy of the proposed settlement terms" is reached. *See* DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed.2008). The factors considered are (1) the influence of fraud or collusion on the Parties' reaching a settlement, (2) "the likelihood of success at trial," (3) "the range of possible recovery," (4) "the complexity, expense[,] and duration of litigation," (5) "the substance and amount of opposition to the settlement," and (6) "the stage of proceedings at which the settlement was achieved." *Bennet v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984).

*Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009).

The fact that the parties agreed to a "claims-made" settlement and reversion to WESS does not render its terms unreasonable. In fact, the parties carefully modeled this settlement after two very similar FCRA class action settlements granted final approval by this Court. *See Harake v. Trace Staffing, Inc.* (8:19-cv-00243-CEH-CPT) (Doc. 55) (Judge Honeywell granted preliminary and final approval of claims-made settlement in nearly identical FCRA case); *Twardosky v. Waste Management, Inc. of Florida, et al* 8:19-cv-02467-CEH-TGW (Doc. 57) (Judge Honeywell oral order granting final approval of claims-made settlement in similar FCRA case); *see also Fosbrink*, No. 8:17-cv-1154 (M.D.Fla.) (DOC. 79 at ¶10); *Saccoccio v. JP Morgan Chase Bank, N.A., 297 F.R.D. 683, 696 (S.D. Fla. 2014)*

(overruling objections to claims-made process because "[t]here is nothing inherently suspect about requiring Class Members to submit claim forms in order to receive payment."); *Atkinson v. Wal-Mart Stores, Inc.*, No. 08-cv-691-T-30TBM, 2011 WL 6846747, at *5 (M.D. Fla. Dec. 29, 2011) (approving claims-made settlement with full reversion).

### 1.     The Settlement Agreement Is Not the Product of Fraud or Collusion.

In assessing the first factor, courts must presume that no fraud or collusion occurred unless there is evidence to the contrary. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007).  The proposed settlement in the parties' Settlement Agreement resulted from arm's length negotiations between Class Counsel and WESS conducted by capable, experienced attorneys and with the assistance of a seasoned and respected mediator, David N. Anthony, and only after two separate mediation sessions.  *See, e.g., Gross v. Advanced Disposal Services, Inc.,* No. 8:17-cv-1154 (M.D.Fla.) (DOC. 94) ("There is no evidence of any fraud or collusion with respect to the settlement. The litigation was contested from the onset, and settlement was only obtained after multiple mediation sessions and continued negotiations through an experienced and respected mediator.").  In addition, after discovery of the increase in class size, the parties engaged in further arm's length negotiations.

Courts have consistently held that the presence of an independent mediator negates any suggestion of fraud or collusion.  *See, e.g., Montoya v. PNC Bank,*

*N.A.*, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016) (use of mediator indicates there is "no suggestion of fraud or collusion"); *Hall v. Bank of Am., N.A.,* 2014 WL 7184039, at *6 (S.D. Fla. Dec. 17, 2014). There was no fraud or collusion in reaching the proposed settlement here. During this process, the parties thoroughly evaluated their claims and defenses in order to negotiate what they believe is the most optimal settlement on behalf of the settlement class.

The absence of fraud and collusion is further evidenced by a Settlement Agreement reached after significant litigation, including Motion practice, extensive written discovery, and multiple mediation sessions. Additionally, there is no evidence that Named Plaintiff sacrificed the interests of the settlement class for his own financial gain. Importantly, as to the b(b)(2) disclosure claim, Named Plaintiff is not seeking to recover any "incentive payment." Nor is he applying for a service award. Rather, Named Plaintiff will receive the same amount each class member will recover for his b(b)(2) disclosure claim. And while the parties did agree to also settle Named Plaintiff's b(b)(3) claim (Count II of the Amended Complaint, which has now been dismissed) for an additional amount ($40,000), they did so only after it was determined that Named Plaintiff's b(b)(3) claim was likely not well-suited for class treatment due to facts unique to him. This individual settlement does not impact the class settlement amount and was at all times negotiated separately. It is being disclosed to ensure complete transparency with the Court by the parties. Accordingly, the first factor unquestionably supports approval of the proposed settlement.

## 2.    <u>Litigating this Case Through Trial Would Be Complex, Expensive, and Time-Consuming</u>.

Although the total expenses that the parties will incur if this litigation progresses and the duration of the litigation, including the appellate process, cannot be predicted with certainty, Named Plaintiff and WESS will vigorously advocate for their respective positions on various legal and factual issues, that will likely entail significant motion practice and possible trial.  WESS denies liability for any alleged willful violations of the FCRA and asserted numerous affirmative defenses to Named Plaintiff's individual and alleged class claims.

Furthermore, if Named Plaintiff's Motion for Class Certification had been filed and granted, the parties would have incurred significant expenses for decertification and likely appeal of the certification of the class; two issues where Named Plaintiff's and WESS's positions differ.  Trial and a potential of post-trial appeals further increases the costs and delay of litigation.

There is no reason to believe that issues raised before, during, or after a trial would be any less vigorously litigated by the parties or less expensive and time-consuming to resolve.  Absent settlement, the resolution of factual issues relevant to each class member's claims would result in protracted litigation.  The proposed settlement will save considerable time and resources that would otherwise be spent litigating disputes resolved by the proposed settlement.  Thus, this factor weighs in favor of approving the proposed settlement in the Settlement Agreement.

### 3.    Settlement Class Counsel Has Documents and Other Information to Realistically Value the Claims.

The parties possess "ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson,* 358 F.3d 356, 369 (5th Cir. 2004). Named Plaintiff has obtained sufficient discovery from WESS to allow for a well-informed and comprehensive settlement on behalf of the settlement class. For example, Named Plaintiff's counsel reviewed WESS's answers to interrogatories, responses to requests for production, entire document production, class list and class-related information, and also critical information from the now-dismissed consumer reporting agency, Defendant Datamaxx.

In addition to the discovery described above, the parties have extensively analyzed legal authorities regarding FCRA claims on a nationwide basis. Counsel for the parties have discussed their claims and defenses with each other extensively, and also with the mediator over the period time period running from May 5, 2021 (the first mediation) through May 28, 2021 (the final mediation). As such, the parties believe that they have sufficient information to reach a fair, reasonable, and adequate settlement. The Settlement Agreement was negotiated based on the parties' realistic, independent assessments of the merits of the claims and defenses in this case.

Not only that, once it was discovered that the class size increased, the parties continued their settlement discussions and significantly increased the common fund made available to class members from $560,000.00 upward to $750,000.00, after lengthy arm's length negotiations. Thus, it should be approved.

**4.**   **Ultimate Success on the Merits of the Claims Is
Uncertain Given the Risks of Litigation.**

When evaluating a proposed class action settlement, the court must balance
the benefits of a certain and immediate recovery through settlement against the
inherent risks of litigation.  *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th
Cir. 1983).  Here, recovery under the Settlement Agreement is favorable for the
29,202 class members given the general uncertainty surrounding all litigation and
the risks specific to this case.

If this litigation proceeds, WESS intends to continue to vigorously defend
against the claims, and Named Plaintiff and the settlement class will face legal
challenges by WESS, including challenges to merits of his claim, decertification, and
an appeal on class certification.  Any one of these challenges could significantly
prolong the litigation at considerable expense to the parties and potentially result in
no recovery for the class members.  Each of these phases of litigation presents
uncertainty and risks, which the proposed settlement allows the parties to avoid.

Without this proposed settlement, in order for the settlement class to recover
any statutory damages under the FCRA, they must not only prove that WESS failed
to comply with the disclosure and authorization provisions, but also that WESS did
so willfully.  *See* 15 U.S.C. § 1681n(a).  Although Named Plaintiff contends that the
violations were willful, WESS will contest the question of willfulness if the lawsuit is
further litigated.  *See, e.g., Schoebel v. Am. Integrity Ins. Co.*, 2015 WL 3407895,
at *7 (M.D. Fla. May 27, 2015) (dismissing FCRA stand-alone disclosure case

11

seeking statutory damages because alleged violation was not willful). And, absent the proposed settlement, continued certification under the current class definition is not certain. Although WESS denies liability and has asserted affirmative defenses to the claims, WESS nevertheless recognizes, as does Named Plaintiff, the risks inherent in proceeding to trial.

5. **The Settlement Agreement Is Fair in Light of the Possible Range of Recovery and Certainty of Damages.**

The Settlement Agreement should be approved because the proposed settlement compares favorably to the limited range of damages available under the FCRA that could potentially be recovered at trial. In his Amended Complaint, Named Plaintiff seeks to recover compensation under 15 U.S.C. § 1681n(a)(1)(A), (2), and (3) for himself and the other class members consisting of (a) statutory damages of not less than $100.00 and not more than $1,000.00; (b) punitive damages, (c) attorney's fees and costs. However, as Section 1681n(a) of the FCRA indicates, proof of noncompliance with the technical requirements of the FCRA alone does not impose liability on a defendant. Recovery of damages under Section 1681n(a) is contingent on establishing that the defendant willfully failed to comply with the FCRA; negligent noncompliance is not sufficient. *Safeco v. Burr*, 127 S. Ct. 2201, 2215 (2007); 15 U.S.C. § 1681n(a). And, even if liability for willful noncompliance is established as Named Plaintiff believes, the determination as to the size of the award is left to the discretion of the jury, which may return an award of no damages as a possible outcome.

The settlement proposed in the Settlement Agreement secures a gross monetary payment to each claiming class member in the approximate amount of $25.00, resulting in a net payment of approximately $15.00. Class Counsel believes that the proposed payment to each class member is a very good settlement, providing more relief to class members here than those in other recently approved settlements. The district court in *Hillson v. Kelly Services Inc.*, summarized the results of such settlements as follows:

> The results counsel achieved for the class were good. The gross recovery (i.e., recovery before fees and other expenses are taken from the fund) is $30.00 per Class Member (on average). This appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. *See Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25.00 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), report and recommendation adopted, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33.00, $40.00, and $44.00).

2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017).

Such amounts are also consistent with similar FCRA cases approved by this Court, and others, here in the Middle District of Florida.[3]

---

[3] *See, e.g., Harake v. Trace Staffing, Inc.* (8:19-cv-00243-CEH-CPT) (Doc. 55) (Judge Honeywell final order approving $33 per-class member recovery in FCRA case); *Twardosky v. Waste Management, Inc. of Florida, et al* 8:19-cv-02467-CEH-TGW (Doc. 57) (Judge Honeywell oral order granting final approval of $31.50 gross recovery and $18.00 net recovery); *Fosbrink v. Area Wide Protective*, No. 8:17-cv-1154 ($39 gross recovery); *Speer v. Whole Food Mkt. Grp., Inc.,* No. 8:14-CV-3035-T-26TBM, Doc. 68

In sum, the settlement proposed in the Settlement Agreement falls within the reasonable range of possible recovery for class members.  "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances."  *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010). Therefore, balancing the risk that liability cannot be established against WESS for willful violations of the disclosure and authorization provisions of the FCRA against the range of possible recovery of damages also strongly supports settlement.

### 6. <u>Settlement Class Counsel and the Parties Support the Settlement.</u>

As evidenced by the Settlement Agreement itself and this Motion, the terms of the proposed settlement have the obvious support of Named Plaintiff, Class Counsel, and WESS.  Named Plaintiff and WESS believe, based on their independent assessments, that settlement is in their respective best interest.  Named Plaintiff and Class Counsel have likewise concluded that the proposed settlement is in the best interest of the class.

Furthermore, the parties anticipate that the proposed settlement will receive broad support from putative class members, especially considering that each individual member who timely submits a claim will receive a settlement check that is

---

(M.D. Fla. January 1, 2016)(final Order entered by Judge Lazzara approving $40 gross recovery for FCRA class members); *Landrum v. Acadian Ambulance Serv., Inc.*, No. 4:14-cv-01467 (S.D. Tex. June 29, 2015) (Doc. 37) (granting final approval of settlement that provides $10 per class member); *Fernandez v. Home Depot, U.S.A. Inc.*, No. 8:13-cv-00648-DOC (C.D. Cal. April 20, 2015) (Doc. 59) (class members to receive $10.00 in FCRA class case).

reasonable and consistent in the context of class action litigation.  Even if applicants in the settlement class were able to overcome the difficulties of financing and finding legal counsel to pursue their relatively small individual claims, few members of the settlement class are likely to be inclined toward pursuing their individual claims.

Therefore, it is unlikely that class members will oppose releasing their pertinent FCRA claims that in reasonable probability they never intended to bring, or were unaware to have possessed.  Even if any class member does not agree with the terms of the proposed settlement, he or she is protected by the right to opt out of the proposed settlement and retain his or her individual FCRA claims against WESS rather than participating in the proposed settlement. The parties believe that the Settlement Agreement, thus, represents a fair, reasonable, and adequate settlement. Consequently, the support of Named Plaintiff, Settlement Class Counsel, and WESS, coupled with the likely support by putative class members, each weigh in favor of approving the proposed settlement.

**B.**    **The Notice Of Class Action Settlement Should Be Approved Because The Form And Manner Of The Notice Satisfies The Requirements of Rule 23 And Due Process.**

The Long Form Notice of Class Action Settlement to be included on the settlement website is attached as Exhibit C, and the Short Form as Exhibit D (which will be mailed to each class member).  Importantly, Judge Honeywell recently approved a similar notice in other FCRA cases, including *Gross v. Advanced Disposal Services, Inc.,* No. 8:17-cv-1154 (M.D. Fla.) (Doc. 94, p. 3) ("Similarly, the Court finds that the Notice of Proposed Class Action Settlement meets the

requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and (e)(1) and comports with due process by clearly notifying class members of their rights, as well as a reasonable timeframe within which to exercise those rights."); *see also Harake v. Trace Staffing, Inc.* (8:19-cv-00243-CEH-CPT) (Doc. 55) (Judge Honeywell approved similar notice in FCRA case); *Twardosky v. Waste Management, Inc. of Florida, et al* 8:19-cv-02467-CEH-TGW (Doc. 57) (Judge Honeywell approved similar notice in FCRA case).

Beyond the notice itself, the proposed notice plan is also reasonable and provides the best notice practicable to the settlement class. Under the Agreement, the Notice of Proposed Class Action Settlement will be sent to each class member via first class mail to the last known addresses of class members based on information contained in WESS's records or obtained by the third-party settlement administrator.

Notice by mail is recognized as sufficient to provide due process to known affected persons as long as the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeHoyos v. Allstate Corp.,* 240 F.R.D. 269 (W.D. Tex. 2007) (sending notice by mail is preferred when all or most Class Members can be identified). The Settlement Agreement also includes provisions to ensure that a reasonable effort is made to locate class members whose notices are returned undelivered and to re-send the Notice of Proposed Class Action Settlement to these persons to the extent possible. Because the Notice of Proposed Class Action

Settlement communicates the essential terms of the proposed settlement in a manner that complies with Rule 23(c)(2)(B) and due process, the Court should approve its distribution to the settlement class.

## III.    MOTION FOR PRELIMINARY CLASS CERTIFICATION

As part of preliminary approval of the proposed settlement, the parties respectfully seek certification of the settlement class for the purposes of settlement.

### A.    The Settlement Class Meets the Requirements of Rule 23(a).

A court can certify a settlement class where the proposed class and proposed class representatives meet the four prerequisites in Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Federal Rule of Civil Procedure 23(b). Here, pursuant to Rules 23(a) and 23(b)(3), Named Plaintiff seeks certification of a defined settlement class (the "Disclosure Form Settlement Class") to consist of:

> Background Check Class:  All individuals in the United States who applied for any position with Whelan Event Staffing Services, Inc. and were presented with a background check disclosure form during the period July 1, 2018 through the date of preliminary approval by the Court.

Certification of a class under Federal Rules of Civil Procedure 23(a) and (b) is subject to a slightly different analysis where certification is contested than where, as here, a proposed settlement is under review.  The proposed Disclosure Form Settlement Class here meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation.

### 1. __Numerosity__

The proposed Disclosure Form Settlement Class of approximately 29,202 individuals is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court may find the numerosity factor satisfied if the Court concludes it would be difficult, inconvenient, and wasteful to attempt to join numerous plaintiffs into one case, using permissive joinder. "While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that having more than 40 class members is generally enough to satisfy the rule." *Klewinowski v. MFP, Inc.,* 2013 U.S. Dist. LEXIS 130591, at *4 (No. 8:13-cv-1204-T-33TBM, M.D. Fla. Sept. 12, 2013) (*citing Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986)). Thus, numerosity is satisfied.

### 2. __Commonality__

The United States Supreme Court recently clarified that to satisfy the commonality requirement of Rule 23(a), the plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)). In the instant case, the essence of Named Plaintiff's b(b)(2) claim posits that WESS failed to provide sufficient notice to class members, pursuant to the requirements of the FCRA. Determining liability on these claims will require resolving numerous common questions of fact, including, but not limited to: (1) whether WESS 's FCRA disclosure form satisfies the notice and authorization requirements under 15 U.S.C. § 1681b(b)(2)(A); and, if not, (2) whether WESS

acted willfully in its failure to satisfy the requirements under the FCRA, which is relevant to damages.  *See* 15 U.S.C. § 1681n and § 1681s; *see also Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 675 (D. Md. 2013) (granting final certification for the Settlement classes under the FCRA).

The claims of class members are based on the same set, or a similar set, of operative facts.  An award of damages to one class member for a violation of the FCRA would justify the award of damages to the remaining class members on the same legal theory, subject to the same defenses.  Even if the award of damages were to vary slightly among class members (which it does not), the Eleventh Circuit has held that the presence of individualized damages does not prevent a finding of commonality. *See Allapattah Serv., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003).  Accordingly, the requirement of commonality has been met.

### 3.    <u>Typicality is Satisfied</u>

Under Federal Rule of Civil Procedure 23(a)(3), typicality does not require identical claims:

> The focus of Rule 23(a)(3) typicality is whether the class representative's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary.

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).  Typicality

measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Rosario-Guerro*, 265 F.R.D. at 627 (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008).

In this case, the legal theory underlying the claims of the putative class members is virtually identical to the Named Plaintiff's FCRA claim. Here, all of the claims are based on a substantially similar, if not identical, set of facts and are grounded in the same legal theories; namely, that WESS's FCRA form(s) failed to satisfy the disclosure requirements under the FCRA. The Named Plaintiff's claim is "typical" of the Class and, consequently, the typicality requirement of Rule 23(a)(3) has been met. *See* FED. R. CIV. P. 23(a)(3).

### 4. <u>Adequacy of Representation</u>

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "This requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. Named Plaintiff, Edward Gorman, is adequate given that his interests are equivalent to those of the settlement class. There is also no obvious conflict of interest between

Named Plaintiff and the settlement class. Named Plaintiff has the same interest as the class members in prosecuting their claims and, in fact, participated actively in the FCRA Litigation including the mediation.

With respect to Class Counsel, the undersigned has extensive class and collective action experience, as detailed in the attached declaration of Luis A. Cabassa and Brandon J. Hill of Wenzel Fenton Cabassa, P.A.  When, as here, the parties are represented by counsel who have significant experience in class-action litigation and settlements and in FCRA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference.

### B.   **The Settlement Class Meets the Requirements of Rule 23(b)(3).**

Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the proposed Disclosure Form Settlement Class meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because common questions of law or fact between the parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

### 1.   **Predominance**

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis.  "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and

that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (*internal citations omitted*).

Here, common questions of law and fact predominate. The central common issues in this case are whether WESS's FCRA forms satisfy the notice and authorization requirements under the FCRA and, if not, whether WESS's failure to comply with the FCRA was willful. These common issues are the most important issues in the case, and can be decided uniformly for all class members in broad strokes. Thus, class certification is appropriate.

### 2.   <u>Superiority</u>

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3).

Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for members of the settlement class in this case and the fact that there are common

22

issues shared by the class members, the individual interest in controlling the case through separate actions is relatively low.

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 679 (S.D. Fla. 2011). Rather than having separate lawsuits filed in different parts of the country in different courts by different class members, the Settlement Agreement -- if approved -- will instead allow all claims by the settlement class to be resolved in one case. Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the settlement class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer v. Summit Partners, L.P.*, 2012 U.S. Dist. LEXIS 63795, at *21 (E.D. Tenn. May 7, 2012) (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor").

## IV.   <u>CONCLUSION</u>

**WHEREFORE**, Named Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order attached as Exhibit A, approving the parties' Amended Settlement Agreement, attached as Exhibit B.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

Pursuant to Local Rule 3.01(g), Named Plaintiff's counsel conferred with counsel for WESS about the issues raised in this Motion and is authorized to represent that WESS does not oppose the relief requested.

DATED this 10th day of February, 2022.

Respectfully submitted,

/s/ Brandon J. Hill
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA**
Florida Bar Number: 053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 10th day of February, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

/s/ Brandon J. Hill
**BRANDON J. HILL**

24